[Civ. No. 31020. Second Dist., Div. Two. Feb. 19, 1968.]

GENEVA E. JOHNSON, Plaintiff and Respondent, v. WILLIAM HARPER JOHNSON, Defendant and Appellant.

Grundell & Fredman and Alva C. Williamson for Defendant and Appellant.

Lloyd E. Somogyi for Plaintiff and Respondent.

HERNDON, J.—William Harper Johnson appeals from "that portion of a judgment of the Superior Court of San Luis Obispo County granting respondent an interlocutory decree of divorce and awarding her alimony, and from an order after judgment awarding respondent attorney's fees and costs on appeal."

Appellant's basic contention is that the trial court erred in failing to give full faith and credit to a decree of divorce which he previously had obtained in the State of Nevada.

On February 4, 1964, respondent filed the instant action. She charged appellant with extreme cruelty and prayed for a decree of divorce, custody of minor children, division of community property, support money for herself and her children, attorney's fees and costs. On August 24, 1964, appellant filed his answer denying respondent's allegations of cruelty and by way of affirmative defense alleged that on October 17, 1963, a decree had been entered in a Nevada court "by the terms of which defendant herein was granted a divorce from plaintiff herein and was awarded the care, custody, and control of the minor children born of the marriage."

By his answer appellant further alleged that "Thereafter, on November 13, 1963, plaintiff appeared in said action personally and by counsel and moved the Court to set aside the aforesaid Judgment and Decree, and after hearing evidence in support of and in opposition to said motion the Honorable Taylor H. Wines denied the motion. The aforesaid Judgment and Decree of divorce is a final judgment of a sister state having jurisdiction over the subject matter and the parties; is entitled to full faith and credit in the within proceeding; and

is res judicata on the issues of marital status, alimony, custody of children, and child support.''

On these pleadings the instant cause was tried. At the conclusion of the trial the court below resolved the issues of fact in favor of plaintiff and respondent except for the finding that the best interests of the minor children required that they be left in the custody of appellant subject to respondent's rights of visitation. The court further found that the Nevada decree had been entered as the defendant husband had alleged but found that the Nevada court lacked jurisdiction over the subject matter and the parties and held that said decree was not entitled to full faith and credit in the California proceeding.

The specific finding on this issue is as follows: ''The Court finds that defendant was not domiciled in the State of Nevada at the time he instituted said divorce action in the State of Nevada or at the time said Nevada Court rendered its judgment of divorce. By reason of such lack of domicile, the Court finds that said Nevada Court did not have jurisdiction over the marital relationship of the parties, and said Nevada divorce decree is invalid and is not entitled to recognition under the full faith and credit clause of the United States Constitution. It further finds that plaintiff was never given an opportunity to have her day in Court in the Nevada proceedings, for the purpose of litigating the issues of marital status, alimony, custody of minor children and child support.''

On the basis of the findings above summarized, the trial court awarded respondent a divorce on the ground of appellant's extreme cruelty, awarded her permanent alimony, attorney's fees and costs. The community property of the parties was divided between them, custody of the minor children was awarded to appellant with rights of visitation reserved to respondent. As we have indicated, the only provisions of the judgment challenged by this appeal are those awarding respondent a divorce and alimony.

For the purpose of indicating the setting in which the issues of fact were resolved, a brief summary of the evidence supportive of the trial court's findings of fact will suffice. Appellant and respondent were married on August 9, 1949, at Santa Ana, California. Three children were the issue of this marriage and their ages at the time of trial were 12, 14 and 15 years, respectively. From 1956, until the time of their separation in July of 1963, the family had resided continuously in San Luis Obispo County.

In July of 1963, it became apparent that a more than friendly relationship had developed between appellant and one Marguerite Kuykendall. A separation resulted from this disclosure. Shortly thereafter appellant and Mrs. Kuykendall left California taking with them the three children of the parties. Appellant testified that at the time of his departure from California, he had not decided upon a destination. With Mrs. Kuykendall and the three children he travelled first to Klamath Falls, Oregon, then to Boise, Idaho and eventually to Elko, Nevada.

Appellant arrived in Elko, Nevada on August 3, 1963, and went to work for the State of Nevada two days later. He filed a divorce action against respondent in the Nevada court on September 12, 1963. He was awarded a judgment of divorce by that court after a default hearing on October 17, 1963. At about the same time Mrs. Kuykendall also filed in the Nevada court an action wherein she sought a divorce from her husband. Appellant paid a substantial part of the costs of this action.

A few days after they had obtained their respective Nevada divorce decrees, appellant and Mrs. Kuykendall returned with the children to California. Appellant was successful in seeking reinstatement as an employee of the California Division of Highways, which employment he had left when he and Mrs. Kuykendall departed on their trip to Oregon, Idaho and Nevada. After their return to California, defendant and Mrs. Kuykendall entered into a ceremony of marriage.

After the disappearance of her husband and children, respondent made intensive efforts to locate them but was unsuccessful until approximately six weeks after his departure. When she learned of his whereabouts in Nevada, she was without funds. When she was served in San Luis Obispo County with copies of the summons and complaint in the Nevada divorce action, she wrote her husband's attorney explaining her financial situation and requested that she be provided with money to enable her to go to Nevada to contest the action. However, she received no response to this request. Thereafter she again wrote appellant's attorney requesting funds to enable her to make the trip to Nevada so that she might interpose her defense in the action. In response to this second request she received advice that a default judgment had been taken against her.

In the latter part of October 1963, respondent's daughter provided her with sufficient funds to enable her to go to Elko,

Nevada for the purpose, as she testified, of making an attempt to regain custody of her children. Respondent retained an attorney in Nevada. This attorney filed in the Nevada proceeding a notice of motion in her behalf reading as follows: "COMES Now the Defendant, GENEVA E. JOHNSON, and moves the Court to Set Aside Judgment and Decree entered and filed in this action on October 17, 1963, and to release the Defendant from said Judgment. Defendant further moves the Court for permission to file her Answer and Cross-Claim in said action, the proposed form of which Answer and Cross-Claim is attached hereto and hereby referred to." After a brief hearing, respondent's motion was denied.

On the basis of the record as above summarized, we hold that the evidence supports the trial court's findings (1) that appellant was not domiciled in Nevada when he sought and obtained from a Nevada court the decree of divorce upon which he relies; and (2) that respondent "was never given an opportunity to have her day in Court in the Nevada proceedings, for the purpose of litigating the issues of marital status, alimony, custody of minor children and child support." We further hold that these findings fully support the legal conclusions that the Nevada court was without jurisdiction over the marital relationship of the parties and that the Nevada decree is invalid and not entitled to recognition under the full faith and credit clause of the federal Constitution.

Appellant contends that respondent's action in moving to set aside the Nevada decree constituted such participation in the Nevada proceedings as to constitute a general appearance and to bar her successful collateral attack upon the Nevada decree on jurisdictional grounds. In support of this contention, appellant relies primarily upon the decisions of the United States Supreme Court in *Sherrer* v. *Sherrer*, 334 U.S. 343 [92 L.Ed. 1429, 68 S.Ct. 1087, 1 A.L.R.2d 1355], and *Coe* v. *Coe*, 334 U.S. 378 [92 L.Ed. 1451, 68 S.Ct. 1094, 1 A.L.R.2d 1376], and the decision of the California Supreme Court in *Heuer* v. *Heuer*, 33 Cal.2d 268 [201 P.2d 385]. These decisions apply the rule that the full faith and credit clause of the federal Constitution bars a defendant from collaterally attacking a divorce decree on jurisdictional grounds in courts of a sister state, where defendant has participated in the divorce proceedings, has had full opportunity to contest the jurisdictional issues, and where the decree is not vulnerable to collateral attack in the courts of the state which rendered it.

144

(Cf. *Farley* v. *Farley*, 227 Cal.App.2d 1, 5 [38 Cal.Rptr. 357].)

That appellant's position is untenable and that his reliance upon the above cited decisions is misplaced is demonstrated by reference to the extensive discussion of these decisions and other applicable authorities found in *Aldabe* v. *Aldabe*, 209 Cal.App.2d 453 [26 Cal.Rptr. 208].

As noted in *Aldabe*, *supra*, at pages 469 et seq., the opinion of the United States Supreme Court in *Sherrer* recites that in that case there had been "findings of jurisdictional fact made by a competent court in proceedings conducted in a manner consistent with the highest requirements of due process and in which the defendant has participated."

 It is further observed that the basic holding in *Sherrer* is that "the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree."

The analysis of the *Sherrer* decision in *Aldabe* results in the conclusion that "Under the rule in *Sherrer* two conditions must combine before it can be said that California must give full faith and credit to the decree of a sister state: (1) the decree must be one not susceptible to collateral attack in the courts of the state which rendered the decree; and (2) there must be participation by the party aggrieved under circumstances which have afforded him full opportunity to contest the jurisdictional issues." (Pages 469-470.)

In *Crouch* v. *Crouch*, 28 Cal.2d 243 [169 P.2d 897], the husband, a California domiciliary, entered and remained in Nevada, as the trial court found, " 'solely for the purpose of obtaining a divorce from the plaintiff.' " The wife, also a California domiciliary, had been served constructively but did not appear in the Nevada action. In *Crouch*, as in the case at bench, the Nevada court made a finding that the husband was domiciled in Nevada and had established a residence there for the six-week period required by Nevada law. The trial court held that the decree of the Nevada court was entitled to full faith and credit. In reversing, the Supreme Court of California said at page 249:

"It is a well established rule that jurisdiction to grant a

divorce rests upon bona fide domicil. Where neither party is domiciled within the state, no divorce can validly be granted and all proceedings, as well as the judgment, are void. Stated another way, a decree of divorce rendered in one state may be impeached and denied recognition in another upon the ground that neither of the parties had domicil at the divorce forum, and this is true notwithstanding the recital in the decree from the other state of the jurisdictional fact of domicil or residence. (See: Beale, Conflict of Laws, vol. 1, §§ 74.3, 111.1 and cases cited therein; Goodrich, Conflict of Laws (2nd ed.) § 123; Rest., Conflict of Laws, § 111; 9 Cal.Jur. 815, 817.) This principle has been recognized by the United States Supreme Court in recent decisions (*Williams* v. *North Carolina,* 325 U.S. 226 [89 L.Ed. 1577, 65 S.Ct. 1092, 157 A.L.R. 1366]; *Esenwein* v. *Pennsylvania, supra,* [325 U.S. 279 (89 L.Ed. 1608, 65 S.Ct. 1118, 157 A.L.R. 1396)]), and has been consistently followed by courts of other states. [Citations.]'' The provisions of the Uniform Divorce Recognition Law are consistent with these principles. (Civ. Code, §§ 150.1 and 150.2; *Kerr* v. *Kerr,* 182 Cal.App.2d 12 [5 Cal.Rptr. 630].)

Appellant here does not question the sufficiency of the evidence to support the trial court's finding that he was not domiciled in the State of Nevada at the time he instituted his divorce action in that state and, of course, it is undisputed that respondent at all relevant times has been a California domiciliary. In *Aldabe* v. *Aldabe, supra,* 209 Cal.App.2d 453, at page 471, it is stated: ''Because we have reached the conclusion that the evidence would have justified the trier of facts to find that 'participation' of appellant in the Nevada proceedings was not such that she 'has been accorded full opportunity to contest the jurisdictional issues;' and therefore the second limitation or condition of the rule in *Sherrer* v. *Sherrer, supra,* was not met.'' The evidentiary support for the finding of the trial court in the case at bench ''that plaintiff was never given an opportunity to have her day in Court in the Nevada proceedings'' is stronger than that which was held sufficient in *Aldabe* to support the same finding.

As we have indicated, the trial court rejected appellant's contention that respondent's appearance in the Nevada court and the filing of her motion to set aside the Nevada decree constituted such participation on her part as to bar her collateral attack and to require that full faith and credit be given the Nevada decree. The trial court's disposition of this contention finds authoritative support in the comparatively

recent decision of the United States Supreme Court in *Armstrong* v. *Manzo,* 380 U.S. 545 [14 L.Ed.2d 62, 85 S.Ct. 1187]. This decision held that a decree of adoption rendered without procedural due process was invalid and that its "constitutional infirmity" had not been "cured by the hearing subsequently afforded to [petitioner] upon his motion to set aside the decree."

Appellant's attack upon the order of the trial court awarding respondent attorney's fees and costs found necessary to enable her to prosecute her appeal is made upon untenable grounds. In *Baldwin* v. *Baldwin,* 28 Cal.2d 406 [170 P.2d 670], the plaintiff wife undertook to challenge the validity of a Nevada decree of divorce upon which the defendant husband relied in his plea in bar to the California action. The trial court found that the defendant had established a bona fide domicile in Nevada and determined that the Nevada decree effectively terminated the relationship of husband and wife. The wife appealed from this judgment and on her motion the trial court allowed her attorneys' fees and costs on appeal. The husband appealed from this post judgment order.

The Supreme Court affirmed both the judgment in favor of the defendant and the order for costs and attorneys' fees, stating at page 417 : "It is now the law of this state that it is only after such an appeal has been finally determined (or the judgment of a California trial court adjudicating such issue has become final) that the validity or lack thereof of the Nevada decree and its effect—and consequently the marital status and reciprocal obligations of the parties in this state— can be conclusively settled. (*Crouch* v. *Crouch* (1946) *ante,* p. 243 [169 P.2d 897].)"

In *Kopasz* v. *Kopasz,* 34 Cal.2d 423, 424 [210 P.2d 846], the decision in *Baldwin* v. *Baldwin, supra,* 28 Cal.2d 406, is cited as authority for the following proposition: "When a valid marriage has been admitted and the issue before the court is the validity of a foreign divorce decree, the trial court may in a proper case grant costs and attorney's fees on appeal until the effect of the foreign decree has been finally determined by the courts of this state."

The judgment and the order are affirmed.

Roth, P. J., and Fleming, J., concurred.